ROSS AND ROBERTS, INC. *vs.* MAURICE SIMON & another.

Suffolk.    February 9, 1950. — May 5, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Contract,* Construction, Performance and breach, Termination, Waiver, For sale of machinery. *Sale,* Contract of sale. *Waiver.*

In a suit in equity for damages for breach of a contract to sell on a specified date certain machinery not owned by the seller at the time of the making of the contract, where the contract provided that the sale should be contingent upon the seller's obtaining title, that time was "of the essence," that he was to "exercise due diligence and use all reasonable efforts" to obtain title, and that if, having done so, he was unable to give clear title on the date specified, the contract should become "null and void" and "all obligations of either of the parties . . . of no further force and effect," evidence did not show to be plainly wrong a finding by the trial judge that the seller, whose obtaining of title was dependent on the taking of certain steps by others in a pending bankruptcy proceeding wherein the machinery was involved and who did not obtain title until about three months after the date specified, had exercised the diligence and efforts required of him by the contract, nor did the evidence require a finding that the date specified was selected as a result of misrepresentations made by the seller and relied on by the purchaser; and a final decree dismissing the bill was proper.

Provisions of a contract for sale of machinery, whereby a date for performance was specified and time was to be "of the essence," were for the benefit of both parties, and therefore a waiver by the purchaser alone of performance on the date specified did not affect the seller's right to rely on other provisions making the contract void and terminating the obligations of "either" party thereunder in case the seller should be unable to give clear title on such date.

BILL IN EQUITY, filed in the Superior Court on December 13, 1948.

The suit was heard by *Brogna*, J.

*H. B. Ehrmann*, for the plaintiff.

*S. H. Rudman*, (*F. L. Swift* with him,) for the defendant Simon.

SPALDING, J. This is a suit to compel specific performance of an agreement to sell certain calendering machinery used in the production of plastic sheets.[1] The case comes here on the plaintiff's appeal from a final decree dismissing its bill. The evidence is reported and the judge made findings of fact.

We summarize the facts as follows: On September 29, 1948, the plaintiff corporation through one Ross, its president, executed an agreement with Maurice Simon, an attorney (hereinafter called the defendant), by the terms of which the defendant agreed to sell, and the plaintiff agreed to purchase, certain calendering machinery for the sum of $65,000. At the time the agreement was executed the defendant did not own the machinery and that fact was stated in the agreement. The sale was expressly made contingent on the acquisition by the defendant of title to the machinery. The agreement recited that the defendant had submitted an offer to purchase the machinery to the trustee in bankruptcy of Fisher Plastics Corporation, hereinafter called Fisher. In fact no offer had been made to the trustee of Fisher; but an offer, as will presently appear, had been made to Textron Pension Plan, hereinafter called Textron. The circumstances leading up to the execution of the agree-

---

[1] At the arguments in this court we were informed that inasmuch as the plaintiff has acquired other machinery and since the machinery in question has been sold to a third person, it now seeks damages for breach of contract.

ment of September 29 were these. Fisher was in the process of being reorganized under the bankruptcy laws in the District Court of the United States for the District of Massachusetts. The machinery in question had formerly been owned by Fisher, but prior to the bankruptcy proceedings it had conveyed all its real estate and machinery to Textron. Textron then leased the property back to Fisher and this arrangement was in effect at the time the reorganization proceedings were begun. Textron took the position that the real estate and machinery were not assets acquired by Fisher's trustee in reorganization, hereinafter called the trustee, and filed a petition in the bankruptcy court to reclaim the property. The trustee, for reasons which need not concern us, resisted the petition. Because various attempts were being made to reorganize Fisher, no hearing was had on the petition. Prior to the execution of the agreement of September 29 the defendant entered into negotiations with one Mr. Burstein, Textron's attorney, with a view to acquiring the machinery in question. During the course of these negotiations the defendant made an offer to Textron for the purchase of the property. When this offer was made, Textron and the trustee had decided to abandon the litigation arising out of the reclamation petition and had agreed to present to the court a petition for leave to compromise the matter. The proposal contained in the petition called for the payment of a certain sum by Textron to the trustee who would in turn release to Textron any interest he might have as trustee in the property. The allowance of this petition and carrying out of the compromise would give to Textron an undisputed title to the machinery in controversy and it would then be in a position to accept the defendant's offer to purchase the machinery. Having made in substance the arrangements just described for the acquisition of the property, the defendant on September 29 executed the agreement for the sale of the machinery to the plaintiff.

With certain exceptions not here material, the time for performance stated in the agreement was twelve o'clock

noon on November 1, 1948. The agreement, after reciting that an offer had been made to the trustee and that the defendant "agrees to exercise due diligence and use all reasonable efforts to procure the acceptance of his offer," provided that "If the vendor's offer is not accepted, or having used reasonable diligence the vendor is unable to give a good and clear title to the said machinery free from all encumbrances on or before November 1, 1948 . . . then and in any such case, this agreement shall be null and void . . . and all obligations of either of the parties hereto shall be of no further force and effect." Elsewhere in the agreement it was provided that "time is of the essence."

On October 13, 1948, the attorney for the trustee filed in court the petition for leave to compromise. At that time he was informed by the clerk that it would be necessary for the judge to set a date for hearing on the petition. On the following day he was notified by the clerk that the date set for the hearing on the petition was November 2, 1948. It is not disputed that under the bankruptcy practice creditors must be given a ten day notice of the hearing on such a petition. The attorney for the trustee upon receiving this information immediately notified the defendant. The defendant thereupon wrote a letter to the plaintiff dated October 14 in which, after informing it of the time of the hearing on the petition, he concluded as follows: "This makes it impossible for me to transfer title . . . [to the machinery] to you by November 1." The plaintiff replied in a letter dated October 22 which stated: "We are willing to extend the time for the performance of your agreement . . . to 12 o'clock noon of the second day of December, 1948. If . . . you find that you will require additional time, please let us know. We shall be very happy to consider a further reasonable extension of time, if this should be necessary, and will coöperate with you to the fullest extent." On October 30, 1948, the defendant wrote to the plaintiff stating that for reasons beyond his control he could not transfer title to the machinery by November 1, and that he was standing on the agreement of September 29, 1948.

The petition to compromise was allowed by the court on November 5, 1948, but the defendant did not acquire title to the machinery until January 31, 1949. The judge found that "had defendant been willing to discuss the extension of time for performance the plaintiff would have extended the time . . . until January 31, 1949." In the latter part of November the defendant made an agreement to sell the machinery to another party. The judge found that the defendant did this in the honest belief. that all obligations under the contract of September 29 were at an end.

The principal question argued by the parties is whether the defendant was justified in treating the contract as at an end upon learning that the hearing on the petition to compromise had been set down for November 2. Under the terms of the agreement the obligations of *"either of the parties hereto"* were to cease "if . . . having used reasonable diligence the vendor is unable to give a good and clear title . . . on or before November 1, 1948" (emphasis supplied). Similar provisions have frequently been before this court, and it has uniformly been held that if it turns out, without fault of the seller, that he cannot give a good title to the property, the obligations of both parties under the agreement shall cease. Such a clause "does not make the duties and responsibilities of either party . . . [in the event that the seller cannot give a good title] depend upon the· option of the other, but by apt language puts an end to the binding force of the contract as respects either party." *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, 273. *Flier* v. *Rubin,* 321 Mass. 464, 466. *Lucier* v. *Williams,* 323 Mass. 458, 462. Compare *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516; *Parkhurst* v. *Maynard,* 285 Mass. 59, 63–64.

The plaintiff does not dispute the principle just discussed, but argues — and rightly — that the defendant could not invoke the clause under consideration as an excuse for nonperformance unless he had complied with his obligation "to exercise due diligence and use all reasonable efforts to procure the acceptance of his offer." Whether he exercised

such diligence and efforts was the principal question in issue at the hearing below.   The judge found that "the defendant exercised due diligence and exerted all reasonable efforts to obtain title to the . . . [machinery] as expeditiously as possible, but that through no fault of his he did not get title until January 31, 1949."   The plaintiff urges that this finding was plainly wrong.   We do not agree.   Most of the evidence on this issue was oral and, as we have said many times, the trial judge is in a far better position to determine its weight and credibility and the inferences to be drawn from it than we are on the printed record.   This principle is so well established with respect to appeals in equity cases, where the evidence is reported, that the citation of a case or two will suffice.   *Berman* v. *Coakley*, 257 Mass. 159, 162. *Boston* v. *Santosuosso*, 307 Mass. 302, 331–332.   In such appeals, as we said in the *Berman* case, "The question to be decided is not what the opinion of the full court might be as to the facts on the printed record alone, but whether it can rightly be said that the findings made by the judge who saw the witnesses and heard them testify are plainly wrong."

There was, it is true, evidence from which it could have been found that the defendant, after he entered into the agreement of September 29, was not entirely happy with his bargain, and suggested to the plaintiff that it pay more than the contract price for the machinery.   It also might have been found that when the defendant learned that he could not acquire title by November 1 he exercised his right not to perform with alacrity, if not enthusiasm.   But there was evidence which fully supported the conclusion of the trial judge.   There was evidence from which he could have found that the petition to compromise, which was filed fourteen days after the agreement of September 29, went forward, all things considered, expeditiously.   Legal questions of some difficulty were involved and several parties had to be satisfied before the petition was ready for filing.   To a large extent the preparation and filing of the petition rested with

the attorneys for Textron and the trustee. There was evidence that the defendant asked them to put the matter through with as much dispatch as possible, and that down to about October 7 or 8 he prodded them from time to time.[1] The fixing of the date of the hearing as November 2 was done by the judge of the United States District Court. The evidence, which is voluminous, need not be summarized. We have examined it with care and have studied the detailed and able analysis of it in the plaintiff's brief. We cannot say the trial judge erred in concluding that the defendant had exercised due diligence and reasonable efforts to procure the acceptance of his offer.

The plaintiff argues that even if the defendant had exercised due diligence and was nevertheless unable to convey the machinery by November 1, 1948, he should not be excused from performance, because that date was inserted in the agreement solely as the result of his own misstatements concerning a reasonable length of time needed in which to acquire the property. In support of this contention it argues that the true intent of the parties in fixing the date of performance was to allow the defendant sufficient time to acquire title to the calendering equipment; that the November 1 date was selected as the result of representations made by the defendant; and that since, as events turned out, performance at that time was not possible, the date fixed in the agreement was based on a mistake induced by the defendant, and a court of equity ought to enforce the agreement so as to effect the object contemplated by the parties. We do not consider the effect of this contention if it could be maintained because we are of opinion that it cannot be maintained.

It is plain, as the agreement shows, that both parties realized that whether or not the defendant obtained title to the machinery was contingent on the outcome of certain proceedings in the bankruptcy court. In discussing the time for performance in the negotiations preceding the ex-

[1] On October 7 the petition had been put in its final form and at that time or shortly thereafter it was signed by the necessary parties.

ecution of the agreement of September 29, the defendant stated that he thought ten days would be sufficient for the necessary steps to be taken in the bankruptcy court. The plaintiff's counsel told the defendant he thought that this time was too short and suggested a longer period. The plaintiff could not have been misled by the defendant's suggestion. Moreover, it was merely an expression of opinion on a matter that the plaintiff's counsel, an experienced lawyer, was in as good a position to know about as was the defendant.

The plaintiff relies mainly on the fact that the defendant made certain representations to it which were not true. The judge's findings touching this issue are as follows. "I find that in the negotiations culminating in the execution of the written agreement the defendant told the plaintiff that he had made an offer to the trustee in bankruptcy of the Fisher Plastics Corporation for the purchase of its assets, when, in fact, the offer had been made to the trustee of the Textron Pension Plan which had the legal title to the assets of the bankrupt, the validity of which was being attacked by the trustee in bankruptcy. I find that the misstatement was not made with any idea of deceiving the plaintiff or for the plaintiff to rely thereon or to refrain from doing anything; and I find that the plaintiff was not misled or prejudiced by it."

The plaintiff argues that the second sentence of the foregoing findings was plainly wrong. It is the plaintiff's position that, if it had known that an offer in compromise was involved instead of an acceptance of the offer by the trustee, a later date for performance would have been selected due to the difference in procedure between the two proceedings. But the judge on the evidence was not required to find that but for the defendant's representation with respect to the offer a different date of performance would have been fixed in the agreement. We cannot say that the conclusions of the judge touching this representation were plainly wrong or that he erred in finding that the "written agreement expresses the true contract of the parties."

We assume, as the plaintiff has argued, that in its letter of October 22, 1948, it waived unqualifiedly the provision as to the time of performance. Had this provision been put in the agreement solely for the plaintiff's benefit it would cease to be operative after it had been waived by the plaintiff provided such waiver had not prejudiced the rights of the defendant. *Moskow* v. *Burke*, 255 Mass. 563, 568. But that is not the case here, for as the judge stated in his findings "the time element was for the benefit" of both parties. One party cannot by waiver put an end to a provision in a contract which, as here, was placed there for the benefit of both parties. There was no evidence that the defendant ever waived the provision as to time. On the contrary, he always insisted on it. The judge rightly found that the agreement "had not been changed by waiver, modification, novation or otherwise."

It follows that the decree dismissing the bill was right. This conclusion makes it unnecessary to discuss questions of damages.

*Decree affirmed with costs.*