BERNIE SOROTA *vs.* CARL BASKIN & another.

Suffolk.    March 6, 1956. — May 7, 1956.

Present: QUA, C.J., RONAN, WILKINS, COUNIHAN, & WHITTEMORE, JJ.

*Contract*, For sale of real estate, Performance and breach.

Evidence that, within some ten days after the making of a contract for sale and purchase of real estate calling for passing papers about a month after its making and providing that if the seller should be unable to obtain a certain extension of an outstanding bank mortgage on the premises the buyer's deposit should be returned and the obligations of the parties to the contract should terminate, the seller consulted an authorized officer of the mortgagee bank, was informed that it would be impossible to grant such extension, notified the buyer to that effect and that he, the seller, considered the contract void, and returned the deposit to the buyer, warranted a finding that the seller acted diligently and was without fault with respect to the extension and did not break nor repudiate the contract; the seller did not have a duty to continue his efforts to obtain the extension up to the time for passing papers.

CONTRACT. Writ in the Superior Court dated July 22, 1949.

The action was tried before *Broadhurst, J.*

*John M. Bashaw,* (*Alvin J. Slater* with him,) for the plaintiff.

*Francis T. Leahy,* for the defendants.

COUNIHAN, J. This is an action of contract for breach of a written agreement for the purchase and sale of real estate consisting of two apartment houses on Humboldt Avenue, Roxbury. The plaintiff was the buyer and the defendants Carl Baskin and his brother Lewis were the sellers. The action was tried before a jury who returned a verdict for the defendants. It comes here upon exceptions of the plaintiff to the admission of evidence, to the denial of certain requests for instructions,[1] and to certain parts of the judge's charge. The plaintiff does not argue his evidential exceptions in his brief so we do not pass upon them. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. There was no error.

On each apartment house there was a mortgage to the Home Savings Bank of Boston, each of which was overdue. The agreement which was dated April 27, 1949, was to be performed on June 1, 1949. It especially provided that "if the sellers shall be unable to obtain formal extensions or

---

[1] "1. The defendants under the contract were bound to exercise reasonable diligence in seeking to procure mortgage extensions from the Home Savings Bank. 2. The defendants under contract were bound to exercise good faith in seeking to procure mortgage extensions from the Home Savings Bank. 3. The defendants were bound under the contract not to abandon efforts to procure mortgage extensions at least until June 1, 1949. 4. The jury is bound to find that the defendants repudiated the contract on or prior to May 9, 1949, and that the plaintiff is therefore entitled to damages. 5. The defendants were bound to diligently pursue efforts to procure mortgage extensions throughout a reasonable period of time and such reasonable period of time could not expire prior to June 1, 1949. 6. The plaintiff had the right to seek mortgage extensions on his own behalf and if the jury should find that the defendants by word or action prejudiced any efforts of the plaintiff in that regard, then the jury should assess damages for the plaintiff. 7. In repudiating the contract on or prior to May 9, 1949, the defendants excused the plaintiff from any further obligation on the part of the plaintiff. 8. In the absence of any agreement to the contrary, a return of deposit under the contract must have been tendered in cash and defendant's failure to so tender constituted a breach of the cancellation clause. 9. The defendants were bound under the contract to pursue the granting of mortgage extensions to the board of investment of the Home Savings Bank."

extensions by letter of the two first mortgages now outstanding on the above described premises" for five years on the same terms as to payments of principal and interest as in the outstanding mortgages "then and in such event, the within agreement shall be cancelled, the deposit paid hereunder returned, and all other obligations of the parties hereto shall cease." The agreement also provided that if the sellers shall be unable to give title or make conveyance as stipulated, any payments made under the agreement shall be refunded and all other obligations of either party shall cease.

It is practically undisputed that one of the defendants first approached an assistant treasurer and later the treasurer of the bank and requested extensions of the mortgages by letter on the terms provided in the agreement. There is no doubt that the treasurer had authority to grant extensions by letter. On April 28, 1949, the treasurer by letter notified the defendants that it would be impossible to grant a five year extension upon the terms stipulated in the agreement and he also so notified the plaintiff and his attorney. Subsequently he modified this by agreeing to extensions but on terms different from those upon which the defendants agreed to sell. On May 7, 1949, the defendants notified in writing an attorney for the plaintiff that the bank had refused to extend the mortgages on the terms provided in the agreement and that they considered the agreement null and void, and returned the deposit of $1,000 by check to the plaintiff.

The plaintiff contends that the defendants were required to use due diligence or reasonable efforts to procure the extensions and that they must continue their efforts up to June 1, 1949, the date of performance.

In a line of cases construing the second condition in the agreement, which is similar to the first condition, to the effect that, if the seller shall be unable to give title as stipulated, any payments made under the agreement shall be refunded and all other obligations of either party shall cease, it has been generally held by this court that this clause .

means that "if it turns out that without fault on the part of the defendants [the sellers] subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease." *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, 273. *Buckley* v. *Meer,* 251 Mass. 23. *Flier* v. *Rubin,* 321 Mass. 464, 466, and cases cited. *Lucier* v. *Williams,* 323 Mass. 458, 461. See *Ross & Roberts, Inc.* v. *Simon,* 326 Mass. 12. Compare *Lafond* v. *Frame,* 327 Mass. 364. The holdings of these cases apply equally to the provision "If the . . . [sellers] shall be unable to . . . make conveyance" as stipulated. In the case at bar it is plain that it could be found that the defendants were "without fault" in failing to obtain the extensions called for in the agreement so that they could not make conveyance as stipulated.

In view of these cases we hold that the defendants were not required as matter of law to do any more than they did and particularly they were under no duty to continue to endeavor to procure the extensions up to the date of the performance of the agreement. The jury could reasonably find that the defendants used due diligence and reasonable efforts to obtain the extensions.

The charge of the judge was unusually painstaking, adequate, and accurate. Requests numbered 1, 2, and 6 were given in exact language or in substance. The other requests were not good as matter of law. There is therefore no merit in the exceptions to the denial of the requests complained of by the plaintiff or in his exceptions to parts of the charge. The duty of the jury was to determine the facts under the instructions of the judge which were more than fair and free from error. "It is necessarily to be inferred from the verdict that the jury found all the terms and conditions of the written contract had been fulfilled by the . . . [defendants]." *Whitty Manuf. Co. Inc.* v. *Clark,* 278 Mass. 370, 377.

*Exceptions overruled.*