HARRY J. STABILE, JUNIOR, trustee, *vs.* WARREN E. MC-CARTHY & another.

Middlesex.     October 10, 1957. — November 13, 1957.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Contract*, For sale of real estate, Cancellation.

A provision of a contract for sale and purchase of land giving the buyer a right at his election to cancel the contract and have his deposit repaid in case he should have been "unable" to obtain approval by the local planning board of a proposed subdivision of the land before the time for passing papers required him to use reasonable efforts to obtain planning board approval in order to become entitled to exercise such right. [402–404]

A prospective buyer and subdivider of land required to use reasonable efforts to obtain approval of his proposed subdivision by the local planning board in order to become entitled to exercise a right given him by his sale and purchase contract to cancel it in case of his inability to obtain such approval must take steps reasonably calculated to obtain the approval not involving expense disproportionate in the circumstances. [404]

A finding that a prospective subdivider of land used reasonable efforts to obtain approval of a subdivision thereof by the local planning board

was not warranted by evidence showing at most that he caused to be prepared a rough "working plan" not conforming in certain basic particulars to zoning laws and planning board regulations and lacking a large part of the engineering work essential for presentation of a plan to the board, that he talked with various local officials including one conversation with the sanitarian, who gave him instructions for making percolation tests for the purpose of a necessary determination of suitability of the land for cesspools and septic tanks, and that the subdivider made the tests himself and then, without the results thereof having been submitted to or passed on by the sanitarian, concluded that the results were "so poor" that "the plan could [not] be accepted" and abandoned the project without even having made formal application to the board for approval of the plan. [406]

CONTRACT. Writ in the First District Court of Eastern Middlesex dated May 19, 1955.

Upon removal to the Superior Court the action was heard without jury by *Broadhurst*, J., who found for the plaintiff. The defendants alleged exceptions.

*George H. Kidder*, for the defendants.

*Paul G. Counihan*, for the plaintiff.

CUTTER, J. This is an action to recover a deposit made at the time of the signing by the plaintiff, on February 11, 1955, of an agreement for the purchase of twenty-seven acres of land in Wilmington. The deed was to be delivered, and the balance of the purchase price paid, on April 22, 1955.

The agreement contained the following special provision: "This agreement is subject to the right of the buyer in the event that he shall have been unable to obtain the approval of the Wilmington Planning Board of his proposed subdivision of the . . . premises prior to the date . . . set for performance . . . at his option to cancel this agreement and claim the return of his deposit, in which event this agreement shall terminate without further obligation on the part of either party . . . ."

The plaintiff waived formal tender of the deed by the defendants and sought, under the provision just quoted, to cancel the agreement and obtain return of the deposit. This the defendants refused.

The relevant testimony, summarized in the bill of exceptions, was to the following effect. The plaintiff, after Febru-

ary 11, 1955, caused an engineer to prepare a "working plan" of subdivision of the land, showing twenty-nine house lots on twenty-seven acres. This plan, as introduced in evidence, still had "considerable engineering work . . . to be done" on it before it could be presented for the board's approval. The plaintiff and others had six conversations with the building inspector of Wilmington, at one of which the engineer was present. Although he attempted to meet with the planning board, he did not succeed in speaking with all members of the board between the date of the execution of the agreement and the date set for passing papers. He did meet twice with the town manager and once with a health officer of the town known as the sanitarian.

As a result of his talk with the sanitarian, who gave him instructions on test procedures, the plaintiff made percolation tests (which the sanitarian declined to make himself because no definitive plan approved by the planning board had been referred to the board of health) at various points on the land to determine its suitability for septic tanks and cesspools. Some of these tests met the standards outlined to him by the sanitarian and some did not.

The plaintiff made no formal application to the planning board for approval of his subdivision plan between February 11 and April 22, 1955. The plan could not be approved by the planning board because it showed that each of seven out of twenty-nine lots had an area of less than the 22,500 square feet per lot required by the planning board's regulations. The plaintiff failed to go forward with his plan because "the results of the percolation tests were so poor that he didn't believe the plan could be accepted." He stated that "he concluded that his . . . tests would be unacceptable as a result of his conversations [1] with the . . . sanitarian and his meetings with . . . the building inspector."

---

[1] In view of the plaintiff's explicit testimony that he "spoke . . . once to the . . . sanitarian," we construe the word "conversations" as referring to that single conference.

The sanitarian testified in substance that the percolation tests made by the plaintiff were performed (except for the season in which they were made) in customary manner and that some of them indicated that septic tanks installed on part of the land in its then state would not have functioned properly. However, there is no indication in the record that the sanitarian saw the results of the tests prior to April 22, 1955, the date set for the conveyance. Regulations of the planning board provide that no residential subdivision will be approved unless the board determines, after adequate investigation by the sanitarian, that the land can be used for residential purposes without danger to health.

The case was heard by a judge of the Superior Court sitting without a jury. He made subsidiary findings of fact and an ultimate finding for the plaintiff in an amount slightly in excess of the deposit. The defendants duly saved exceptions (a) to the trial judge's refusal to give their sixth requested ruling that there was "no evidence . . . to warrant a finding that the plaintiff made a reasonable effort to obtain the approval of his . . . subdivision by the" board and (b) to the trial judge's conclusion [2] that "on all the evidence . . . the plaintiff was excused from . . . further effort to make a plan . . . because of the virtual condemnation of the site by the sanitarian and his declaration that the board of health would not approve it."

1. The plaintiff in his brief in effect concedes that he was bound to use reasonable efforts to obtain planning board approval. The trial judge so ruled. The ruling was correct. The special provision, although ambiguous, was inserted to free the plaintiff of obligation to purchase by giving the plaintiff the power to cancel the agreement, upon the hap-

[2] Findings, on the same general subject matter, to which exceptions were also taken were: "When the result of the tests was reported to the sanitarian he informed the plaintiff that the board of health would not approve the property for residential uses. . . . The plaintiff could have revised his plan . . . to show lots of not less than 22,500 square feet each, but . . . the cost . . . would have been . . . considerable, and since the land itself was declared by the sanitarian not to be such as would be approved by the board of health the plaintiff did not file any formal application with the planning board for approval of his tentative plan and did not have any other plan made, but decided to abandon the project."

pening of a condition precedent, namely, "that he shall have been *unable* to obtain the approval of the . . . planning board" (emphasis supplied).

The parties quite clearly intended a binding contract to purchase, not a mere option (compare *Proctor* v. *Union Coal Co.* 243 Mass. 428, 432; *C. J. Hogan, Inc.* v. *Atlantic Corp.* 332 Mass. 322, 328) in the plaintiff to purchase without any obligation of affirmative action on his part. If the parties had intended no obligation on the plaintiff to take action they could have used a clause in the special provision importing no suggestion of obligation, inability or impossibility, or could have made the vendor's obligation to convey and the vendee's obligation to purchase "subject to" the granting of approval (compare *Connor* v. *Rockwood*, 320 Mass. 360; *Livoli* v. *Stoneman*, 332 Mass. 473, 475–476), instead of making inability to obtain planning board approval a condition precedent to the exercise of a right to cancel.

Since no subdivision plan existed when the agreement was signed, the plaintiff, in order to cancel, must show more than inability to obtain approval of a particular then existing plan. It must have been contemplated that he would prepare a plan conforming (as the plaintiff's rough working plan did not) to the basic applicable zoning laws and planning board regulations, and that he would try reasonably to obtain planning board approval (if necessary, with adjustments, not involving disproportionate expense, to meet the board's views) prior to the date set for the conveyance. Under the circumstances, the special provision implied that the plaintiff must do at least this much, before the condition precedent (inability to obtain approval) to cancellation would be satisfied. See *Sorota* v. *Baskin*, 334 Mass. 123 (especially request numbered 1 set forth at page 124, footnote 1, mentioned with approval at page 126). See also *Lach* v. *Cahill*, 138 Conn. 418, 422; Corbin, Contracts, § 570. Compare *Eno Systems, Inc.* v. *Eno*, 311 Mass. 334, 339; *Eastern Paper & Box Co. Inc.* v. *Herz Manuf. Corp.* 323 Mass. 138, 141–142.

The special provision, to be sure, contains no express re-

quirement (compare *Widebeck* v. *Sullivan*, 327 Mass. 429, 433) that the plaintiff use reasonable efforts to obtain approval. The absence of such an express requirement, even if found in other analogous provisions of the contract, is not significant here, where the circumstances make it plain that reasonable efforts must be made by the plaintiff before his right of cancellation arises.[3]

2. Even under an express requirement that "reasonable effort" be employed, uncertainty necessarily will exist about what effort must be made. Compare *Widebeck* v. *Sullivan*, 327 Mass. 429, with *Ross & Roberts, Inc.* v. *Simon*, 326 Mass. 12, 15–17. In each instance it is a question for the trier of the facts whether reasonable efforts have been exerted. However, the plaintiff, in order to show that he has done enough to meet the condition precedent to his right to cancel, need prove not absolute impossibility, but merely activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances. Compare *Forester* v. *O'Connell & Lee Mfg. Co.* 328 Mass. 377 (where, although the agreement did not expressly require efforts by the vendors, the court, at pages 379–380, stated that the inference was justified that reasonable efforts had been made); *Livoli* v. *Stoneman*, 332 Mass. 473, 475–476 (where the agreement was held not to require action "at any cost" to the buyer).

3. In the present case, the judge's ultimate finding that the plaintiff is entitled to recover the deposit is based directly upon the conclusion that the "plaintiff was excused from . . . further effort . . . because of the virtual condemnation of the site by the sanitarian." This conclusion in turn includes, and is expressly based upon, a subsidiary finding that the sanitarian had virtually condemned the site. See in note 2, *supra*, other subsidiary findings to the same

---

[3] Compare cases dealing with clauses ending the binding effect of a purchase contract where, in the absence of an express requirement that the vendor use reasonable efforts to cure title defects, a vendor lacking title and hence "unable to convey good title" is under no obligation to take action to cure defects, except as he may be guilty of fault or bad faith. See *Fisher* v. *Sneierson*, 330 Mass. 48, 50–51; *Sorota* v. *Baskin*, 334 Mass. 123, 125–126, and cases cited.

effect although in slightly different language. The defendants contend that all these subsidiary findings (about the supposed ruling of the sanitarian) are unwarranted by any evidence in the bill of exceptions (which purports to state all the material evidence). Examination of the bill of exceptions shows that there was in fact no evidence upon which the judge could properly find that the sanitarian had ruled on the site at all prior to the trial. There was evidence of only one conversation between the plaintiff and the sanitarian. At that conference (which was prior to any percolation tests) the sanitarian gave the plaintiff instructions about making percolation tests. There is no evidence of any further communication to or from the sanitarian or of any further conversation with him, or of any ruling by him upon the results of the tests, prior to April 22, 1955, the date set for conveyance.

4. It is thus apparent that the trial judge was under a misapprehension of the evidence when he based his conclusion that the plaintiff was excused from further effort (to obtain approval of a plan) upon some supposed ruling about the site by the sanitarian. We need not decide whether, if there had been such a ruling, it would have been sufficient to excuse further effort by the plaintiff. However, in considering the defendants' sixth requested ruling that there was "no evidence . . . to warrant a finding that the plaintiff made a reasonable effort to obtain . . . approval," we must recognize that no ruling by the sanitarian gave the plaintiff any excuse for inaction.

On this record, the trial judge would have been warranted in finding at most (a) that the plaintiff, after the agreement was signed, prepared a subdivision plan which did not meet the basic requirements of the applicable laws and regulations, and on which there had been done "only a little more than half of the engineering work necessary to prepare a plan for presentation for the planning board's approval"; (b) that he conferred with the town manager twice, the sanitarian once, and the building inspector six times; and (c) that he ascertained what was required for, and made, the percolation tests. There was no evidence to show (a) that a sub-

division plan could not have been devised by the plaintiff which would comply with the basic applicable laws and regulations;[4] (b) that it would be impracticable to revise the plan to meet the drainage problem, without disproportionate expense, taking into account any grading and filling of the land which normally in any event would be reasonable and necessary to adapt the land to subdivision uses; or (c) that the expense of any changes which might be required by the town authorities would be disproportionate. The testimony of the sanitarian about the deficiencies of the site is not conclusive. The sanitarian's opinion, which on this record appears never to have been given prior to the trial, might well have been different if he had been afforded opportunity to examine a more skilfully prepared plan, reasonably adjusted to meet the problems encountered during its preparation.

We think that there was insufficient evidence to warrant a finding that the plaintiff had made reasonable efforts to obtain approval. The efforts shown to have been made by him were at most preliminary and indecisive. The evidence falls short of showing that filing and prosecution of an application and plan prepared with reasonable ingenuity would not have resulted in eventual approval, and would have been an empty gesture. Compare *Schilling* v. *Levin,* 328 Mass. 2, 5–6; *Leigh* v. *Rule,* 331 Mass. 664, 668–669. The defendants' sixth requested ruling should have been granted.

In view of what has been said, it is not necessary to consider the defendants' exceptions based upon the misapprehension of the trial judge about the sanitarian's supposed ruling or whether those exceptions deal with any ruling of law by the trial judge or present any question of law for our consideration under the doctrine of *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166–167, or otherwise. The misapprehension has been fully taken into account in considering whether the defendants' sixth request should have been given.                    *Exceptions sustained.*

[4] Indeed, some indication that revision might have been possible is given by the trial judge's finding that the plaintiff "could have revised his plan so as to show lots of not less than 22,500 square feet each." See note 2, *supra.*