TOWN OF WELLESLEY *vs.* WILLIAM BROSSI & others.

Norfolk.    December 10, 1959. — March 7, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Zoning. Evidence,* Presumptions and burden of proof.

In a suit to enjoin an alleged violation of a zoning by-law or ordinance by
a nonconforming use of premises, the burden is on the defendant to
prove the defence that such use existed at the time of the adoption of
the by-law or ordinance. [460]
A conclusion that the use of a room of a house, located in a residence zon-
ing district of a town, by a family engaged in a masonry and construc-
tion business merely for business telephone calls, making out bills and
checks, receiving mail, and minor bookkeeping was a use permitted by
the zoning by-law of the town as an accessory, "incidental" use of the
house was warranted by evidence that the room was "used principally
for rest and recreation," that, although it had a desk and typewriter,
it had no file cabinet, that the telephone had no business listing, that
no business sign or clerical staff was maintained on the premises, that
no masonry or building materials were delivered there, that no cus-
tomers came there, and that the work of the family was done at the
locations of their jobs elsewhere. [461]
A conclusion.in a suit that the defendant, owner of premises in a resi-
dential zoning district of a town, had established a preëxisting non-
conforming use of his premises for the parking of a dump truck em-
ployed in his business was not warranted where it appeared that the
defendant had first purchased a dump truck and parked it on the
premises about three years after the adoption of the zoning by-law,
notwithstanding certain parking of a dump truck on the premises by
his brother, then the owner, prior to the adoption of the by-law and
continued permissive and temporary parking of a truck by the brother
for a short time after the conveyance of the premises to the defendant.
[463]
A conclusion that the owner of land in a residential zoning district of a
town had not established a preëxisting nonconforming use of his
premises for the storage of building materials employed in a masonry
and construction business was justified on indefinite evidence in a suit
to enjoin such storage of materials brought many years after adoption
of the zoning by-law. [464]
A contention that the parking of "an unlettered pick-up truck of ordi-
nary size," used by two brothers in their business of building houses,

at their home in a residence zoning district of a town "after the completion of their day's work" was an accessory, "incidental" use of their home permitted by the zoning by-law was without merit where it appeared that each brother kept a passenger automobile on the premises. [464]

A mason who had stored hand tools in a shack on premises in a town before adoption of a zoning by-law therein placing the premises in a residence district and before he had built a house thereon, was, after adoption of the by-law and after demolition of the shack upon erection of the house, entitled to keep reasonable quantities of hand tools suitable for one mason in the garage on the premises. [464]

Even if a cement mixer formerly used in its owner's masonry business might properly be used temporarily at his home in a residence zoning district for the purpose of building a retaining wall, the mixer must be removed from the home premises after the lapse of a reasonable time for building the wall. [464]

The fact that the owner of premises in a residential zoning district of a town had, prior to the adoption of the town's zoning by-law, stored on the premises a few pieces of lumber used by him in his work as a part time mason, operating by himself, would not justify storage on the premises, after the adoption of the by-law, of a larger amount of lumber and staging and other equipment used in a full time masonry business and a general building business. [465]

BILL IN EQUITY, filed in the Superior Court on September 16, 1958.

The suit was heard by *Tomasello*, J.

*William R. Cook*, Town Counsel, for the plaintiff.

*Robert W. Meserve*, (*Richard Bancroft & Charles N. Gregg, Jr.*, with him,) for the defendants.

CUTTER, J. The town seeks to enjoin alleged violation of its zoning by-law by the defendants.[1] The trial judge granted only part of the relief sought by the town. By the final decree each of the defendants was enjoined "from making use of the premises at 21 Pleasant Street in Wellesley [approximately 1,500 feet north of the Wellesley railroad station] . . . only to the extent of the storage of sand, rock, cement blocks, brick and wood or other building materials." The town has appealed from the judge's interlocutory order for a decree. All parties have appealed from the final decree.

[1] These are William Brossi and Jennie M. Brossi, who own as tenants by the entirety the premises at 21 Pleasant Street, and their sons Joseph Brossi and David A. Brossi.

William Brossi's brother, Louis, bought the land on Pleasant Street, on which the houses numbered 19 and 21 now stand, on June 8, 1923. Louis on February 24, 1925, conveyed approximately 8,400 square feet of this vacant land to William. The land so conveyed is the site of the house at 21 Pleasant Street. Louis retained the land at 19 Pleasant Street on which in 1924 he had built a house. He sold his house and lot in 1930.

William built the house at 21 Pleasant Street in 1929. He had built a two car garage on the lot in 1928. In 1942, the property was placed in the names of himself and his wife as tenants by the entirety. In 1941, Mrs. William Brossi bought about 13,760 square feet of vacant land adjoining 21 Pleasant Street.

The land at 21 Pleasant Street and the adjoining still vacant land are in a general residence district. Under the Wellesley zoning by-law in such a district "no . . . premises shall be . . . used for . . . [a]ny . . . trade . . . or commercial purposes" or for any purpose except one or more of the uses specified in § 3.[2] The defendants contend that the town is trying to prevent nonconforming uses of the premises which were being made prior to the original adoption of the zoning by-law on March 30, 1925, and to its approval by the Attorney General on April 24, 1925.

The trial judge found the facts stated above and also made the following findings. Louis Brossi in 1923 "was in the masonry and trucking business." He "kept his dump truck, for use in masonry work, upon the [then] vacant

---

[2] So far as here relevant the uses permitted under § 3 are those authorized in single residence districts by § 2. The pertinent provisions of § 2 permit single family detached houses and such accessory uses "as are customary in connection" therewith and "incidental thereto, including a private garage . . . and also including office of a professional man in his own residence." By § 7 of the by-law nonconforming uses are permitted as follows: "A. Any lawful use being made of any building, structure or premises at the time this by-law takes effect may be continued in the same building, structure or premises . . ." subject to the provisions of par. B that "No non-conforming use shall be changed, moved, or extended, and no . . . structure devoted to a non-conforming use or uses, in whole or in part, shall be . . . replaced by a new . . . structure, unless 1. Every non-conforming use in the . . . structure is changed to a use or uses authorized in the district in which the nonconforming use . . . or structure is located; or . . . ."

premises now . . . 21 Pleasant Street." He also stored there building supplies "intended for use in the construction of" his house on the adjoining land (19 Pleasant Street). William "was also engaged in . . . masonry with his brother and later separately." When William bought the 21 Pleasant Street premises from Louis (February 24, 1925) prior to the adoption of the zoning by-law by the town, he "moved a small 'shanty' to the premises." In that "he kept his few tools and a wheelbarrow used in the masonry business. In 1928 he purchased a dump truck, and . . . [since then] has kept the . . . truck and replacements thereof upon the . . . premises. At intervals subsequent to . . . [William's] acquisition of the premises . . . he stored [on the premises] surplus stone, sand and bricks . . . left from masonry work done elsewhere. . . . Later . . . he stored a metal staging upon . . . [the] land . . . under canvas cover." When William built his house in 1929, he "demolished the shanty and stored his masonry tools in the basement of the garage . . . . He also placed his dump truck in the garage as he returned from work evenings. The . . . dump truck had no identifying signs . . . as to . . . William . . . or any business conducted by him."

The telephone at 21 Pleasant Street was in the name of William alone. Mrs. Brossi helped in keeping books and in sending out and paying bills. This work was done in the sun room of the house "used principally for rest and recreation."

William's two sons live at 21 Pleasant Street. About 1955, the sons "formed a construction company," Brossi Construction Company. All construction was done by them "away from the premises." No deliveries of material were made to 21 Pleasant Street, except some windows delivered by error. Bills were sent out on Brossi Construction Company billheads from 21 Pleasant Street and there bills were received and books kept. Their business "was not voluminous." No customers came there to deal with them, but they received telephone calls there on their

father's telephone.   They parked "an unlettered pick-up truck of ordinary size," used in their business, at 21 Pleasant Street "after the completion of their day's work."

Upon these facts and "the observation of exhibits" (deeds, zoning maps, correspondence with town authorities, and photographs of the premises) the judge concluded (A) that Mrs. Brossi's vacant land was not being used by "nonconforming use or otherwise in violation of the" zoning by-law; (B) that Mr. and Mrs. Brossi had "established a nonconforming use of . . . 21 Pleasant Street to the extent of storage of tools, including a staging, used in the masonry business, and the parking of a dump truck used in . . . that business"; (C) that Mr. and Mrs. Brossi "have not established a nonconforming use of the premises for the storage of . . . building material"; (D) that "storage of . . . tools in the basement of the garage, and . . . the parking of the truck in the garage, will be more conducive to . . . the sightliness of the . . . residence district and should be permitted"; (E) that the activities of the defendants at 21 Pleasant Street "do not constitute an industry, trade . . . or commercial purpose within the language and intent of" the zoning by-law, "but a harmless and incidental use to their residential use"; and (F) that such use "does not substantially increase any . . . detrimental effect upon the use on the neighborhood."

The evidence is reported.   Accordingly, "all questions of law, fact and discretion are open for our decision" under the principles stated in *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178.   We recognize the weight to be given to the findings of the trial judge who heard the evidence, here largely oral. *Ross & Roberts, Inc.* v. *Simon,* 326 Mass. 12, 17.   *Linse* v. *O'Meara,* 338 Mass. 338, 345.   *Seekonk* v. *Anthony,* 339 Mass. 49.   The defendants, of course, have the burden of proving facts sustaining their affirmative defence that they are entitled, by reason of activities prior to the adoption of the zoning by-law, now to make a nonconforming use of the premises.   *Colabufalo* v. *Public Bldgs. Commr. of Newton,* 332 Mass. 748, 751.

Wellesley *v.* Brossi.

1. The trial judge reasonably concluded that the use of the sun room of the house for business telephone calls, making out bills and checks, and receiving mail was a use incidental to the use of the house as a dwelling. The telephone had no business listing. The sun room contained a desk and typewriter but no file cabinet. To be sure, neither William Brossi nor his sons had any other office. Their work was done where there was masonry or building to be done, not at 21 Pleasant Street. In a sense, they had no real office anywhere, as they are builders and artisans doing work intermittently at many separate places for different customers. The Brossis did not have any business signs on the premises. They maintained no clerical staff there. William and his sons, assisted by Mrs. Brossi, did such minor bookkeeping as was done for the business of William and the sons. Except for telephone calls and the receipt and dispatch of mail and possibly one isolated conference with a customer of the sons in the street in front of the house, there was no evidence of contact with customers at the house. Materials for the masonry business and the construction business were not delivered there by suppliers, except on one or two occasions by mistake. The evidence did not require the trial judge to conclude, and does not lead us to infer, that the defendants have conducted any business[3] in the house or on the premises, apart from the storage of vehicles, equipment, and materials on the premises, in any manner which violated the zoning by-law or exceeded a proper incident of residential use.

2. The evidence shows that William upon his arrival in the United States in 1923 worked at least part time in a cement block factory and, "after hours" and when not working at the factory, worked in his trade of masonry "on . . . [his] own" and "separately" from his brother,

[3] There has been thus far not even such activity in the house as that permitted in a residence district by the by-law (see footnote 2, *supra*) to a professional man, like a lawyer, doctor, or dentist, which would bring clients or patients in substantial numbers to the premises. See discussion in *Lexington* v. *Govenar*, 295 Mass. 31, 33–34. Under the zoning by-law, use of the premises for the reception of customers would exceed, for anyone but a professional man, a proper incidental residential use.

Louis, with whom he lived at the house of one Crowley "about two lots down" the street "below . . . where . . . [they] bought the land." Louis did trucking when he could get it and at other times did cement work, landscaping, stone work, some masonry, and plastering. He did no house building. In his masonry jobs, William himself dug cellars, built stone walls, and put in cellar floors and walls. He helped Louis to build his house at 19 Pleasant Street. When Louis transferred the 21 Pleasant Street lot to William, there was lumber on it, "about 30 planks" used for staging "to wheel a wheelbarrow" and for forms for masonry work, "for a front step, like that."

Louis kept the materials for his work at the site of his various jobs but brought back to the then vacant lot "any material left over." William in connection with his own work has brought surplus materials to 21 Pleasant Street, but "usually we don't have much left over . . . 25 or 50 bricks . . . unless it's a great big job." "Some of this material . . . on the premises was in connection with" the buildings being built there and at 19 Pleasant Street. In 1923 when William went to work he put his tools in a little cart which he dragged behind his bicycle to the site of his job. He would hire a truck to carry planks to the job. From 1938 on, William engaged in building houses for sale and in some remodelling of houses.

Very soon after William acquired the 21 Pleasant Street premises, he put a chicken coop on his land to use as a tool house. In it he kept his "wheelbarrow . . . shovels . . . picks and hoe . . . main tools, which you could handle. . . . [B]ig stuff, like plank and things like that, . . . [he] used to . . . put on the land." In 1925 he had planks for staging and building mortar boxes on his property, but now he uses steel staging. In 1925, he mixed mortar and built his mortar boxes at the sites of his jobs. William did not remember whether Louis then had bricks or concrete blocks on his lot. He and his brother did have cement there, but this had to be kept "inside." Sand, "[s]ometime[s] half a load," was kept there by Louis. William usually had a

little sand there "enough so he could do a fireplace, and something within that scope."

In 1928, when William built his two car garage he began to store there his tools and his Ford Model T dump truck, bought that year. He had bought a passenger automobile in 1926. He testified that, even after 1925, he continued to permit Louis to store his truck and the other items on the land until he (William) "got around to using the land." He kept the shanty even after he began to store his tools in the garage, but tore it down when he built his house in 1929. Louis testified that he kept his truck on William's land only for a few months after the transfer of the land to William, until his own land was graded. The trial judge found that Louis kept his truck there until "eight or nine months" after the completion of Louis's nearby house in 1924.

At one time William used a cement mixer, but he stopped using this when already mixed cement became available about 1937. From then on until recently the cement mixer was stored in the cellar of the garage until William started to build a wall on Mrs. Brossi's property in his spare time. At the time of the trial it had been on Mrs. Brossi's lot for six months.

(a) Subsidiary findings of the judge, justified by the oral evidence, in effect establish that there was about a three year gap between 1925 when Louis ceased to park his truck on the premises and 1928 when William bought his dump truck. These findings seem to us inconsistent with the judge's conclusion that William and his wife "have established a nonconforming use of the premises" for "the parking of a dump truck." We see no basis for any conclusion that Louis's parking of his truck on the premises after their conveyance to William was more than permissive and temporary. The use by William which began in 1928 bore no perceptible relation to the earlier truck parking. The final decree should have enjoined the parking of the dump truck on the premises.[4]

---

[4] In reaching this conclusion we give no weight to § 7F of the zoning by-law providing that the right to a nonconforming use "discontinued for . . . one year . . . shall terminate," cf. *Dobbs* v. *Board of Appeals of Northampton,* 339 Mass. 684, 686–687, for § 7F, on this record, is not shown to have existed prior to 1957.

(b) The judge was also justified in concluding that the defendants had not established any substantial or continuous use of the premises for the storage of any significant amount of building materials prior to the effective date of the zoning by-law. The evidence, as we view it, left somewhat indefinite the description of the precise materials stored thirty years prior to the trial, the regularity of such storage, and the precise years when they were so stored. It is hard to determine how much, if any, storage of building materials there was, other than materials used in building the houses at 19 and 21 Pleasant Street and the garage. This latter type of storage clearly was designed to be only temporary.

(c) Each Brossi son, in addition to parking on the premises the pick-up truck used, so far as appears from the record, solely in their business of building "houses on speculation," has there a passenger automobile. There is thus no basis for holding that the persistent parking of the pick-up truck, a business vehicle, is incidental to residential use of the premises. It was not an existing use when the zoning by-law became effective.

(d) There was no storage of tools by William prior to the zoning by-law except in the shack. Such tools as were stored there were hand tools, such as a single mason engaged in part-time work for different customers would naturally keep at his house. Such hand tools in reasonable quantities for a one man operation, even if the shanty was torn down in 1929, William may now reasonably keep in his garage in connection with his present residential use of the property.

(e) The use of the cement mixer to build a retaining wall on Mrs. Brossi's land may have been justified as a temporary matter for a time reasonable to permit the construction of the wall. It cannot be left indefinitely upon that land or in the cellar of the garage. The trial was in October, 1958. A reasonable time for the construction of the wall has now elapsed. If the cement mixer is still on any part of the premises, the decree must provide for its removal. It is not

the type of equipment used by William prior to the effective date of the zoning by-law or appropriate to the part-time work he was then doing.

(f) The storage on the premises of lumber, as we read the evidence, was of little more than a few two by fours and planks for the construction of small masonry forms and mortar beds (requiring four planks each) and for laying down at building sites tracks for the wheelbarrow. To the extent that such items would be used as equipment by a part-time mason, operating by himself, the judge was justified in concluding that such use was made prior to the zoning by-law. We do not think that the evidence shows any storage in 1925 of a "staging" in the sense of a fixed wooden or metal platform or of loose interlocking piping of the type generally used today.

This 1925 storage was done for his own convenience by a part-time mason operating by himself on a residence lot which he had bought near where he lived. There is now storage of a larger amount of planks and some pipe staging, in connection with a full-time masonry business and a more general building business. The change is not intrinsically large and is much less substantial than those changes considered in *Seekonk* v. *Anthony*, 339 Mass. 49, 53–54, and the cases there cited. Nevertheless, the change is, in a somewhat analogous sense, a change in the character and purpose of the use. No business conducted at 21 Pleasant Street has simply grown. Cf. *Building Commr. of Medford* v. *McGrath*, 312 Mass. 461, 462; *Wayland* v. *Lee*, 325 Mass. 637, 643–644; *S. C.* 331 Mass. 550. Cf. also *Marblehead* v. *Rosenthal*, 316 Mass. 124, 128. To the extent that more elaborate equipment than hand tools and a small amount of lumber is now stored or that the present storage of planks, timbers, staging, and other equipment exceeds that which one mason would reasonably keep on his home premises for convenience, it is beyond the incidental storage use in 1925 of this lot acquired for residence purposes. To that extent it should have been enjoined.

3. The interlocutory order for a decree and the final decree are reversed. The case is remanded to the Superior Court for the entry of a new decree consistent with this opinion.

*So ordered.*