| 32 | 71 |
| 80 | 604 |
| 32 | 71 |
| 81 | 196 |
| 32 | 71 |
| 83 | 21 |
| 32 | 71 |
| 116 | 329 |

## THOMAS v. STICKLE *et al.*

1. Conveyance: WARRANTY: MEASURE OF DAMAGES: VENDOR AND VENDEE. While an eviction by judgment of law is not necessary in order to entitle the grantee of real estate to maintain an action on the covenants of warranty, and while it is sufficient if he yield the title to one paramount, yet if he so yields or buys in an outstanding one, he does so at his peril; and in an action on the covenant, in such case, the burden is upon him to show that the title to which he yielded or bought in was paramount to that of his grantor.

2. —— This rule applies as well to cases of a vendee holding under a title bond of the usual character and form from his vendor as to cases of a grantee holding under an absolute conveyance, with covenants of warranty from his grantor.

3. Tax sale and deed: STATUTE OF LIMITATIONS. An action for the recovery of lands sold for taxes cannot be maintained (except in the case of minors and other cases excepted by the statute) after the lapse of five years from the date of the execution and recording of the tax deed. Rev., § 790.

4. —— It was the intention of the statute to cure all irregularities in the mode or manner of sale which, within the limitation fixed,

might have rendered the sale invalid. It is accordingly *held*, that a tax deed, showing the land sold in bulk, is not excepted from the operation of the statute.

5. —— PURCHASE BY OWNER. The purchase of lands at a tax sale, by one claiming to be the owner thereof, is invalid.

6. —— ESTOPPEL. Where a person executes a conveyance of real es⁻ tate, he is thereby estopped from afterward asserting a certificate of tax sale held by him, and which he did not disclose at the time of such conveyance.

*Appeal from Jones District Court.*

WEDNESDAY, JULY 26.

THIS action was brought to foreclose a title bond made November 27, 1866, by which A. C. Stickle bound himself to convey to Linus Pitcher the undivided half of the S. E. quarter of the S. E. quarter of section 15, township 85 north, of range 4 west, upon the payment to him by said Pitcher of $200, with ten per cent interest thereon, payable on the 27th November, 1869. The plaintiff avers that said bond was duly recorded; that, on the 6th day of April, 1867, said Stickle and wife conveyed said real estate to the plaintiff by deed of general warranty, subject only to the rights of said Pitcher under said bond, which deed was duly recorded April 10, 1867; that, at the time of such conveyance, said Stickle assigned his interest in said bond to the plaintiff, and guaranteed the payment of the money to become due thereon; that the same has not been paid; that plaintiff, on the 25th day of January, 1870, tendered to said Pitcher a deed of general warranty for said real estate, and demanded payment; and that said Pitcher refused to accept said deed or make payment.

The petition demands judgment against both defendants for the amount of principal and interest due on the bond.

On the 8th of April, 1870, Pitcher filed his separate answer, averring that the plaintiff had no title to the land mentioned in the bond, and setting up title in himself,

acquired through one S. J. Cook.  Whereupon the plaintiff amended his petition by alleging that his title was founded upon a tax deed, and that Pitcher well knew the fact when he received the bond sued on; that, before the purchase of said land and bond by plaintiff, said Pitcher promised that in case plaintiff should so purchase, he (Pitcher) would pay the amount to become due thereon to the plaintiff; and that, relying on said promise, he made said purchase and paid his money therefor.  That, at the time of the making of said bond, the government title was in one G. A. Calloway; that one J. B. Gaddis held said title for the use of said Calloway; that in 1868 said Calloway brought suit in the district court of Jones county, Iowa, against said A. C. Stickle and S. J. Cook *et al.*, to set aside the tax title to said real estate held by plaintiff; that said suit was settled; that, by the terms of said settlement, Pitcher agreed to pay off plaintiff's claim in consideration of certain payments made by said Cook, and the said Gaddis conveyed his title to the lands in controversy by quitclaim deed to Cook, and said Cook conveyed by like conveyance the same lands (being the lands in controversy) to the said Pitcher; and that this is the title which Pitcher now fraudulently sets up against plaintiff.

The defendant Stickle answered, admitting all the allegations of the petition as amended, except that he guaranteed the money to become due on the bond, which he denied.

On the 4th of June, 1870, Pitcher filed a cross petition to quiet the title to the land in dispute, setting forth the several conveyances through which he claimed the title in himself.  He also, in his answer, denied that, on the settlement of the Calloway suit, he agreed to pay the plaintiff's claim, or that he ever agreed to pay the bond in suit.

On the 15th of June, 1870, the plaintiff answered the

cross petition, admitting the tax sales set forth and the making and recording the tax deeds as stated, but denied the facts alleged to invalidate the tax deeds under which plaintiff claims title. Plaintiff also pleads the statute of limitations as to his deed, recorded Nov. 25, 1863, that more than five years have elapsed from the time of recording the same before the filing of defendant's cross petition. Plaintiff also alleges that the tax deed under which Pitcher claims title is void, for the reason that, at the time of the assessment and sale and of the execution of such deed to Cook, Cook himself was the owner of the land.

The defendant Stickle also filed an answer to the cross petition, which is the same in substance as the plaintiff's answer thereto.

The cause was tried by the court by the first method of equitable trials, upon the pleadings, documentary evidence, and depositions admitted without objection; and at the December term, 1870, judgment was rendered in favor of plaintiff against A. C. Stickle for the amount the plaintiff paid him for the bond, with six per centum interest, and a decree was rendered dismissing plaintiff's petition so far as it sought to foreclose against Pitcher, and quieting Pitcher's title to the property. Plaintiff excepted, and appeals.

*Sheean & McCarn* for the appellant.

*Pierce & Keeler* for Pitcher.

*John McKean* for Stickle.

MILLER, J. — This cause, being triable in equity by the first method, it comes before us for trial *de novo*, without

1. CONVEY-ANCE: warran-ty deed: meas-ure of dam-ages: vendor and vendee.

regard to the decision of the court below. *Blake* v. *Blake*, 13 Iowa, 40. The evidence is before us on an agreed abstract, from which

it appears that, on December 25, 1868, one G. A. Calloway commenced suit, in the district court of Jones county, against S. A. Cook and A. C. Stickle, to set aside certain tax deeds held by them respectively upon the land in controversy. Such action was brought long after the plaintiff had purchased all of the interest of Stickle in the land; but neither Thomas nor Pitcher were made or became parties to the action. The defendant Pitcher went into possession of the land under a title bond assigned to the plaintiff by Cook, a party to the bond, and had never been disturbed in such possession. He paid the interest due on the bond to the plaintiff in November, 1867, and November, 1868. The money specified in the bond became due in November, 1869, at which time Pitcher called on the plaintiff and obtained an extension of time for payment. He then, without informing the plaintiff of what he was doing or intending to do, commenced negotiating with Cook, Stickle and the other parties to the suit, to effect a settlement of the Calloway claim and buy in his title. In this he succeeded, Calloway conveying to Cook and Cook to Pitcher.

This court held, in *Baker* v. *Corbett's Adm'r*, 28 Iowa, 317, that where a vendee, holding a contract for the conveyance of real estate, pays a part of the purchase-money and enters into possession of the premises under the vendor, and he afterward buys in an outstanding title, that of the vendor being defective, the measure of damages is the same as it would have been had a warranty deed been executed by the grantor to the grantee, instead of a contract to convey title. And it is said, *arguendo*, in that case, that "the bond executed by Allen, and the entry and possession under it by plaintiff as between the parties, operated as though Allen had executed to the plaintiff a warranty deed. * * * The plaintiff went into possession under Allen and acquired all the rights that Allen could have conferred by a warranty deed."

Applying the principles and reasoning of that case to the one under consideration, we find that, in November, 1866, the defendant Pitcher went into possession of the land, under his contract for a conveyance thereof from Stickle. He has remained in undisturbed possession ever since that time. He consents to a conveyance by Stickle to the plaintiff, subject to his bond for a conveyance. During this time Pitcher purchases what he sets up as an outstanding title, paramount to that of the plaintiff. Now, had Pitcher been in possession under a warranty deed from the plaintiff, he would have had no right of action unless he had been evicted of the possession. Technically, an eviction is a lawful disturbance of possession or dispossession by judgment of law. 2 Hill. on Real Prop. 404. An eviction by judgment of law is not, however, necessary. The party may voluntarily yield the possession to him who has the better title, or may purchase and hold it; and this is a sufficient ouster or disturbance to sustain an action on the covenant of warranty. *Funk* v. *Creswell*, 5 Iowa, 62, and cases cited; *Hamilton* v. *Curtis*, 4 Mass. 348; *Sprague* v. *Baker*, 17 id. 585.

But if he yields possession or buys in an outstanding title he does so at his peril. If the title to which he yields or which he buys is not good, he must stand the loss; and in either case, in an action against his warrantor, the burden of proof is upon him to show that the title purchased by him, or to which he yielded, was paramount to that of his grantor; although it is otherwise in case of an eviction by force of a judgment at law, with notice of the suit to the warrantor. *Hamilton* y. *Curtis, supra.*

We proceed to inquire, therefore, whether the title purchased in by the defendant Pitcher was paramount to that 3. TAX SALE: that of the plaintiff? Could the grantors of statute of limi- tations. Pitcher have successfully maintained an action against the plaintiff for the recovery of the land in dispute at the time Pitcher purchased in their titles?

Calloway was the patentee of the land from the government. He conveyed to Cook who conveyed to Pitcher. The plaintiff's title is based upon a tax deed executed and recorded November 25, 1863, upon a sale of the land for taxes made in 1860, for the delinquent taxes of 1859. At the time Calloway commenced his action, to set aside this and other tax deeds, more than five years had elapsed since the execution and recording of this deed. Pitcher took possession and was holding the land under the plaintiff by virtue of a contract of purchase. A judgment in the Calloway suit would not have affected the rights of the plaintiff or Pitcher, they not having been made parties thereto. *Heimstreet* v. *Winnie et al.*, 10 Iowa, 430; *Baldwin* v. *Thompson*, 15 id. 504; *Beckwith* v. *Dargets*, 18 id. 303; *White* v. *Watts*, id. 75; *Donnelly* v. *Rusch*, 15 id. 99; *Johnson* v. *Harmon*, 19 id. 56.

Thomas claimed the land under a tax deed then recorded more than five years, and Pitcher was in possession under him by virtue of his contract of purchase with Stickle, which had been assigned to Thomas. No action therefore to recover the land could, at the time Pitcher purchased Calloway's title, have been maintained by Calloway, under the statute, which provides that "*No action for the recovery of real property, sold for the non-payment of taxes, shall lie, unless the same shall be brought within five years from the date of sale.*" Rev. 790; *Eldridge* v. *Kuehl*, 27 Iowa, 160; *Henderson* v. *Oliver*, id. 20.

It is insisted, however, by appellee that, inasmuch as this tax deed shows upon its face that several tracts of land were sold for taxes in bulk for a gross sum, it is void on its face. That the statute of limitations applies only to a deed that is *prima facie* good. In this view we cannot concur. This statute is one of repose, and it was the manifest intention of the legislature to cure all such irregularities in the *mode or manner* of sale, etc., which, within the five years' limitation, might render the sale invalid. While the

statute will not preclude a party after the lapse of five years from the recording of the tax deed from showing that, notwithstanding the recitals in the deed, "*the land was not sold for taxes*," yet, as to an irregularity in the sale such as is claimed in this case, it must be taken advantage of before the statute has run, if at all. Upon such irregularities, when there has been a sale, the statute operates as a bar. See *Case* v. *Albee*, 28 Iowa, 277; *Pillow* v. *Roberts*, 13 How. (U. S.) 472. In the case last cited, Mr. Justice GRIER, in the opinion of the court, says: "In order to entitle the defendant to set up the bar of this statute" (a statute of Arkansas similar to ours) "after five years' adverse possession, he need only to show that he and those under whom he claimed held under a deed from the collector of the revenue, of land sold for the non-payment of taxes; he was not bound to know that all the requisites of the law had been complied with in order to make his deed a valid and indefeasible conveyance of the title. If the court should require such proof before a defendant could have the benefit of this law, it would require him to show that he had no need of the protection of the statute before he could be entitled to it. Such a construction would annul the act altogether."

So in this case, the appellee points out only a single defect in the tax deed, viz.: that several tracts were sold for a gross sum, hence, if it were not for this irregularity in the sale, the plaintiff's title would be complete and perfect, independently of the limitation clause in the statute, and he would have no need to rely upon it. If he must show a perfect title, by showing a strict compliance with all the requisites of the revenue law, before he can claim the benefit of the limitation clause, that clause is practically useless. We cannot concur in such a construction, a construction entirely annulling the effect and meaning of a portion of the law.

It follows from the foregoing views that plaintiff's title

Thomas v. Stickle.

to the land in dispute was paramount to that of Calloway's which the defendant purchased in of him.

It is claimed, however, that Cook held a tax deed for the land made subsequent to that of the plaintiff and which was paramount thereto, which the defendant also purchased. Upon an examination of the evidence we find that, at the time of sale of the land for taxes upon which this latter deed is based, Cook was himself claiming to be the owner of the land under the tax deed of 1863 ; that March 25, 1867, he conveyed the land by quitclaim deed to Stickle, which deed was recorded on the same day; and that, April 6, 1867, Stickle conveyed to the plaintiff, by warranty deed, subject only to the title bond under which Pitcher was in possession.

*5. ——purchase by owner.*

And he held the certificate, upon which the tax deed was afterward obtained, at the time he conveyed all of his interest in the land to Stickle, the grantor of the plaintiff, and there is nothing in the evidence to show that he made any disclosure of the fact of having such certificate at the time of such conveyance. We are of opinion that by his conveyance and silence, Cook is estopped from setting up this subsequent tax deed, and that Pitcher cannot claim to occupy any better position than his grantor. When Cook conveyed *all of his title and interest* in the land to Stickle by his quitclaim deed, he not only parted with all interest therein which he held under his tax deed, but also his lien (if any) he may have had on the land by virtue of the tax certificate, and he was estopped from predicating any title thereon.

*6. ——estoppel.*

The judgment of the district court dismissing plaintiff's petition is reversed, and the cause remanded with directions to that court to enter judgment of foreclosure as prayed in plaintiff's petition.

Reversed.