PHILIP BERGER & another *vs.* DAVID H. SIEGEL.

Suffolk. March 4, 1952. — May 29, 1952.

Present: LUMMUS, RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract,* Construction, To dispossess tenant, For sale of real estate, Performance and breach. *Words,* "Eviction."

Discussion by SPALDING, J., of the meaning of the word "eviction." [76–77]

An agreement by the seller in a contract of sale of an apartment house "to evict tenant" in a certain apartment "if . . . [the purchaser] so desires," the option "to be exercised no later than the date of passing papers," obligated the seller upon notice from the purchaser of the exercise of the option to proceed with reasonable expedition to dispossess the tenant by process of law; and a breach of such obligation entitling the purchaser to a refund of a deposit under a provision of the contract therefor in case the seller should be unable to make the stipulated conveyance was not shown by evidence that the seller received such notice on the day before the date for passing papers and that up to the time set for passing papers he had not instituted legal proceedings to dispossess the tenant.

CONTRACT. Writ in the Superior Court dated July 22, 1948.

The action was heard by *Baker,* J., without a jury.

*Alan J. Dimond,* for the defendant.

*William J. Curran,* for the plaintiffs.

SPALDING, J. The plaintiffs bring this action of contract to recover a deposit of $1,000 made by them under a written

agreement for the purchase and sale of a parcel of real estate. A judge of the Superior Court, sitting without a jury, found for the plaintiffs. The case is before us on the defendant's exceptions to the judge's denial of several requests for rulings.

There was evidence of the following: The plaintiffs, Philip and Anna Berger, communicated with the defendant in response to the following advertisement: "Apartment Available — 12 apts. all of 6 and 7 rooms, income $8,200. See 231–243 Harvard Ave., Allston: Price $46,000. Cash about $8,000. Bal. mortg." The female plaintiff testified that at that time she was "under eviction proceedings." On May 22, 1948, the parties entered into a written agreement whereby the defendant agreed to sell, and the plaintiffs to buy, the property advertised, which consisted of four three family houses. The premises were to be conveyed on or before June 30, 1948, "by a good and sufficient quitclaim deed . . . conveying a good and clear title . . . free from all encumbrances" except a first mortgage in the sum of $37,300. The purchase price was to be $45,000, of which the plaintiffs made a part payment in the sum of $1,000 upon the execution of the contract. The balance was to be financed by the plaintiffs' assumption of the mortgage and payment of $6,700 "in cash upon the delivery of said deed."

The contract provided that the premises were to be conveyed free of all tenants, except tenants in possession at the time the agreement was signed. But an earlier paragraph, the crux of the present controversy, stated: "The party of the first part [defendant] agrees to evict tenant at 239 Harvard Ave. Suite 1, if the party of the second part [plaintiffs] so desires. This option is to be exercised no later than the date of passing papers." There was also a provision for a refund of any payments made under the contract if the defendant was unable to make the stipulated conveyance.

On June 23, 1948, the defendant received a letter from the plaintiffs' attorney which stated that he would be at the Suffolk registry of deeds on Thursday, June 24, 1948, at 12:30 P.M. On the same day, the defendant received another

letter from the plaintiffs' attorney stating: "per your agreement, will you kindly have vacant at the time of passing papers, Suite #1 at 239 Harvard Avenue."

It is not disputed that on June 24 the plaintiff Anna Berger and her attorney met the defendant and his attorney at the registry of deeds at the appointed time; that the defendant tendered a deed of the premises and asked Anna whether she had the balance of the purchase price; and that she replied that she did not have any money with her. She testified, however, that she had with her $4,510 in coöperative bank shares and that her brother who was waiting near by had with him coöperative bank shares for $3,200. She further testified that, although able, ready, and willing to perform, "she would not inasmuch as the defendant could not deliver to her a vacant apartment."

There was evidence that the defendant had not instituted legal proceedings to evict the tenants occupying suite 1 during the interval between his receipt of the written notice on June 23 and the meeting at the registry of deeds on June 24. The defendant testified, however, that as a result of negotiations with the tenants' attorney the tenants agreed to vacate the premises by October 1, 1948. The defendant concedes that apartment 1 was occupied by tenants at the time the parties met at the registry of deeds.

Several requests presented by the defendant sought an interpretation of the paragraph in the agreement whereby the defendant agreed "to evict tenant at 239 Harvard Ave. Suite 1, if the . . . [plaintiffs] so [desire]," and the plaintiffs were given the right to exercise "this option . . . no later than the date of passing papers." In substance the judge refused to rule in accordance with the defendant's first and fourth requests that the defendant was at all times ready to perform, and that the defendant did not agree to have suite 1 vacant at the time papers were passed. The denial of these requests was error.

The paragraph in the agreement around which this controversy turns was artlessly drawn and difficulties are encountered under any interpretation placed on it. It has

been said that the word "eviction" is "borrowed from the feudal law, and . . . [is] often misleading when adopted into our modern systems of conveyancing and of actions." *Kramer* v. *Carter*, 136 Mass. 504, 507. The original and technical meaning of the word was dispossession by legal process. *Hamilton* v. *Cutts*, 4 Mass. 349, 352. *Nesson* v. *Adams*, 212 Mass. 429, 430. *Thomas* v. *Stickle*, 32 Iowa, 71, 76. *Cowdrey* v. *Coit*, 44 N. Y. 382, 392. *Fritz* v. *Pusey*, 31 Minn. 368, 370. *Brass* v. *Vandecar*, 70 Neb. 35, 38. But when used today the word has a broader meaning and includes "an actual expulsion of the tenant, or some act of a permanent character, done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises or some part of it." *Bartlett* v. *Farrington*, 120 Mass. 284. *Royce* v. *Guggenheim*, 106 Mass. 201, 202. *De Witt* v. *Pierson*, 112 Mass. 8, 10. *Skally* v. *Shute*, 132 Mass. 367, 370. *Voss* v. *Sylvester*, 203 Mass. 233, 240. *Westland Housing Corp.* v. *Scott*, 312 Mass. 375, 381. It is plain, we think, that the parties did not have in mind an eviction by physical expulsion and used the word in its original sense, that is, dispossession by process of law.

But there are difficulties even in this construction. We take judicial notice that under our statutes proceedings by a landlord to recover possession of premises are attended with some delay. See G. L. (Ter. Ed.) c. 239. The requirements of law as to notice must also be satisfied. G. L. (Ter. Ed.) c. 186, § 11, and § 12, as appearing in St. 1946, c. 202. Even after the recovery of judgment execution may be postponed for a considerable period. G. L. (Ter. Ed.) c. 239, §§ 9–12. St. 1946, c. 43, as amended. We do not construe the agreement to evict as imposing on the defendant an absolute undertaking to dispossess the tenant in suite 1 irrespective of when the plaintiffs exercised their option. Otherwise the plaintiffs could at their whim make performance by the defendant within the literal meaning of the agreement impossible. Such a construction would render the plaintiffs' undertaking illusory and is to be avoided if possible. "It is a well settled principle that a construction rendering a con-

tract valid and enforceable is to be preferred to one which makes it void or its performance impossible or meaningless." *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 230. See *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153. It is not to be assumed that the agreement contemplated the impossible. We conclude, therefore, that the clauses under consideration obligated the defendant upon notice from the plaintiffs to proceed with reasonable expedition to evict the tenants occupying suite 1 by legal process. We recognize that our construction of the clauses in question cuts down as a practical matter the period during which the plaintiffs might effectively exercise their option, but it seems preferable to the construction suggested by the plaintiffs, namely, that the defendant was required at least to institute proceedings for possession upon notice that the option had been exercised. While it could have been found that the defendant did not institute legal proceedings within the one day period set by the plaintiffs' notice, that was not fatal. It is difficult to see what would have been accomplished by the mere commencement of legal proceedings within the brief period between exercise of the option and the passing of papers.

It is apparent from his rulings that the judge took the view that the defendant was in default. But, as we hold, that was not so. In these circumstances the plaintiffs were not entitled to the return of their deposit. *King* v. *Milliken*, 248 Mass. 460, 463. *Chertok* v. *Kassabian*, 255 Mass. 265. *Beck* v. *Doore*, 319 Mass. 707, 710. It follows that the exceptions are sustained and that judgment is to be entered for the defendant. G. L. (Ter. Ed.) c. 231, § 124.

*So ordered.*