ROBERT C. SECHREST vs. GEORGE E. SAFIOL & another.[1]

Norfolk. February 5, 1981. — May 6, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

Contract, Sale of real estate, Cancellation.

In an action by which the plaintiff sought to retain a deposit made by the
buyer under a purchase and sale agreement, the judge erred in finding
that the buyer was entitled to terminate the agreement and recover his
deposit under a provision of the agreement permitting such termina-
tion if the buyer should be unable to obtain certain permits and ap-
provals for construction of a single-family dwelling on the property
where there was insufficient evidence to warrant a finding that the
buyer had made reasonable efforts to obtain the necessary permits and
approvals. [570-572]

CIVIL ACTION commenced in the District Court of North-
ern Norfolk on January 26, 1978.

The case was heard by Kelleher, J.

Edward C. Donlon for the plaintiff.

Roy D. Toulan, Jr., for George E. Safiol.

HENNESSEY, C.J. In this contract action, Robert C.
Sechrest seeks to retain a $3,800 deposit made by George E.
Safiol as the buyer under a purchase and sale agreement. A
District Court judge ordered that the deposit be returned to
Safiol. Sechrest requested a report to the Appellate Divi-
sion of the District Courts, which dismissed the report, and
he now appeals to this court pursuant to G. L. c. 231, § 109.

The District Court judge made the following findings of
fact. On September 20, 1977, the parties signed a purchase
and sale agreement under which Safiol agreed to buy from
Sechrest a vacant lot in Wellesley, upon which Safiol
planned to build a single-family dwelling. Safiol made a

[1] Stanley E. Collinson, Jr.

deposit of $3,800.[2] At Safiol's request, the date for perform-ance was extended three times, from October 21, 1977, to December 9, 1977; Safiol was told no further extensions would be allowed. On December 9, 1977, Safiol notified Sechrest that he was terminating the agreement in accord-ance with the provisions of paragraph thirty-one of the pur-chase and sale agreement. That paragraph provides that "[t]he BUYER's obligations under this agreement are condi-tioned upon BUYER obtaining from the proper public authorities all permits and other approvals reasonably necessary, in the judgment of BUYER's attorneys, for con-struction of a single family residence, similar to those in the neighborhood, on the land being purchased under this agreement. If the BUYER has not obtained all such permits and approvals, with appeal periods, if any, having expired, on or before October 14, 1977 [extended, by agreement, to December 9, 1977], then at the BUYER's option all payments made hereunder by the BUYER shall be refunded forthwith and all other obligations of the parties hereto shall cease and this agreement shall be void and without recourse to the parties hereto."

Safiol never submitted any building plans or any applica-tion for a building permit to the town of Wellesley; nor did he seek any other town approval necessary for the construc-tion of a single-family dwelling. He did have an architect prepare preliminary drawings, which he submitted for a price estimate to the builder he had chosen. In November, 1977, the builder informed Safiol that he would not be available for the construction. Safiol obtained estimates from other builders but did not select a builder and never completed the final plans.

The judge allowed Sechrest's request for ruling that "[w]here conditions relate to a Buyer's performance under a real estate Purchase & Sale Agreement, Buyer is obliged to

---

[2] The deposit was made to Collinson, as broker, who deposited it with the court at the commencement of the action by Sechrest and took no fur-ther part in the case.

use good faith and to take steps to attempt to fulfill such conditions and cannot seize upon his own inaction as the basis for terminating on the ground of non-fulfillment." The judge found that Safiol had acted in good faith, had made all reasonable efforts to obtain final plans, and had taken reasonable steps to comply with the terms of the agreement. He therefore ordered that the deposit be returned to Safiol. The Appellate Division considered the question whether reasonable effort was employed to be a question of fact and concluded that the judge's findings were not plainly wrong.

At issue here is the import of the contractual provision conditioning the buyer's performance on his "obtaining from the proper public authorities all [necessary] permits and other approvals." Sechrest contends that this provision requires the buyer to take steps reasonably calculated to obtain the necessary approval. Such steps should include some interaction with the public authorities, argues Sechrest, and as Safiol never even attempted to secure the necessary permits and approval, the judge erred in concluding that Safiol had taken reasonable steps to comply with the agreement.

Safiol urges us to abide by the language of the contractual provision, which does not expressly require the buyer to try to obtain any permit or approval.[3] We reject such a literal interpretation. The apparent purpose of the provision in the purchase and sale agreement was to give the buyer the power to terminate the agreement in the event he was unable to obtain the necessary approval from the town. The

---

[3] Besides disputing the merits of Sechrest's argument, Safiol argues that because Sechrest did not request a ruling specifically addressing Safiol's obligation vis-à-vis the proper authorities, the question is not properly before us. The Appellate Division apparently agreed, noting further that Sechrest had not filed a request for a ruling as to the sufficiency of the evidence to warrant a finding that Safiol had taken reasonable steps to comply with the terms of the agreement. Although a specific request for a ruling might have brought the issue into clearer focus, we think the issue of what the contractual provision requires is a matter of law sufficiently raised below so as to be a proper subject for our review.

provision cannot be viewed as creating a mere option in the buyer to purchase without any requirement of affirmative action on his part. Necessarily implied in the provision is an obligation to use reasonable efforts to obtain town approval. See *Stabile* v. *McCarthy*, 336 Mass. 399, 402-403 (1957).[4] *Stabile* involved a purchase and sale provision conditioning the buyer's performance on his ability to secure the approval of the town planning board for his proposed subdivision. We there observed that "[i]t must have been contemplated that [the buyer] would prepare a plan conforming . . . to the basic applicable zoning laws and planning board regulations, and that he would try reasonably to obtain planning board approval . . . prior to the date set for the conveyance. Under the circumstances, the special provision implied that the [buyer] must do *at least this much*, before the condition precedent . . . to cancellation would be satisfied" (emphasis added). *Id.* at 403. The quantum of effort required on the part of the buyer was said to be "activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances." *Id.* at 404.[5]

In *Stabile*, the buyer had prepared a working plan of the proposed subdivision and had spoken with various public officials, but had made no formal application to the planning board for approval of the plan.[6] Characterizing the

---

[4] In a similar vein, courts have recognized that "subject to financing" clauses in purchase and sale agreements impose on the buyer a duty to use reasonable efforts to secure the requisite financing. See Annot., 78 A.L.R.3d 880 (1977) (collecting cases in which buyers' efforts were deemed sufficient or insufficient).

[5] Cf. *Livoli* v. *Stoneman*, 332 Mass. 473, 475-476 (1955) (although buyer ultimately failed to secure approval of subdivision plan due to unanticipated, prohibitive costs, buyer had done everything "reasonably necessary" and was not required to secure approval "at any cost"). We disapprove the suggestion in *Connor* v. *Rockford*, 320 Mass. 360 (1946), that a contract under which a party's performance is subject to a private third party's approval imposes no obligation even to attempt to procure the approval.

[6] The buyer had had six conversations with the town building inspector, had spoken with the town manager and the health officer, and had tried to meet with the planning board. He had decided not to go forward with

buyer's efforts as "at most preliminary and indecisive," we concluded that "[t]he evidence falls short of showing that filing and prosecution of an application and plan prepared with reasonable ingenuity would not have resulted in eventual approval, and would have been an empty gesture." *Id.* at 406. The facts found by the judge here compel us to reach the same conclusion.

As the evidence was insufficient to warrant a finding that Safiol had made reasonable efforts to obtain approval, the contractual condition allowing the buyer to terminate the agreement was not satisfied, and Sechrest had the right to retain the deposit. See *Berger* v. *Siegel,* 329 Mass. 74, 78 (1952); *King* v. *Milliken,* 248 Mass. 460, 463 (1924). The order of the Appellate Division dismissing the report is reversed, the finding for Safiol is vacated, and judgment is to be entered for Sechrest.

*So ordered.*

---

the plan because he believed it would not be accepted because of sanitation problems. *Stabile* v. *McCarthy,* 336 Mass. 399, 401 (1957).